IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| M.E.O.W.I.E. FOUNDATION INC. dba BEACH BROADCAST and CARROL HALL,<br><br>             Plaintiffs,<br><br>   vs.<br><br>ALPHABET, INC.; GOOGLE LLC, dba YOUTUBE; XXVI HOLDINGS, INC.; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; and DOE PARTNERSHIPS 1-50,<br><br>             Defendants. | CIVIL NO. 21-cv-00215-DKW-WRP<br><br>**MEMORANDUM IN SUPPORT OF MOTION** |

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

MEMORANDUM IN SUPPORT OF MOTION ......................................................1

FACTUAL & PROCEDURAL BACKGROUND ................................................2

    The YouTube Service and the Governing Agreements...................................3

    Plaintiffs' Claims Against YouTube .................................................5

STANDARD OF REVIEW .......................................................................7

ARGUMENT ..................................................................................7

I.     PLAINTIFFS' SECOND AMENDED COMPLAINT SHOULD
      BE DISMISSED AS A MATTER OF LAW .................................................7

    A.    Section 230 Bars Plaintiffs' Claims ......................................8

        1.    YouTube is Protected by Section 230(c)(1) .............................9

        2.    YouTube is also Protected by Section 230(c)(2)......................12

    B.    Plaintiffs' Claims Fail on Their Merits ...............................15

        1.    Plaintiffs Fail to State a Breach of Contract Claim .................15

        2.    Hall Lacks Standing to State a Claim under
            HRS § 480-2 ......................................................17

        3.    Hall Fails to Allege that YouTube Violated
            HRS § 480-2......................................................20

    C.    Plaintiffs Improperly Name Uninvolved Parent
        Organizations......................................................21

II.    IN THE ALTERNATIVE, THIS CASE SHOULD BE
      TRANSFERRED TO THE NORTHERN DISTRICT OF
      CALIFORNIA .........................................................22

CONCLUSION ................................................................25

# <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

## CASES

*Ass'n of Apartment Owners of Newtown Meadows ex rel. its Bd. of Directors v. Venture 15, Inc.*, 115 Haw. 232 (2007) ......................................18

*Atl. Marine Constr. Co. v. United States Dist. Ct.*,
571 U.S. 49 (2013) ...................................................................................23, 24

*Balthazar v. Verizon Haw., Inc.*,
109 Haw. 69, 123 P.3d 194 (2005) ...............................................................21

*Barnes v. Yahoo!, Inc.*,
570 F. 3d 1096 (9th Cir. 2009) ........................................................9, 11, 12

*Batzel v. Smith*,
333 F.3d 1018 (9th Cir. 2003) ........................................................................8

*Bennett v. Google, LLC*,
882 F.3d 1163 (D.C. Cir. 2018)...............................................................10, 14

*Biltz v. Google, Inc.*,
2018 U.S. Dist. LEXIS 112632 (D. Haw. July 6, 2018) ..............................23

*Bridge Aina Le'a, LLC v. State of Haw. Use Comm'n*,
125 F. Supp. 3d 1051 (D. Haw. 2015).............................................................7

*Brittain v. Twitter, Inc.*,
2019 U.S. Dist. LEXIS 97132 (N.D. Cal. June 10, 2019)............................11

*Cupo v. Aliomanu Sand Castles, LLC*,
2017 U.S. Dist. LEXIS 206918 (D. Haw. Dec. 15, 2017) ...........................23

*Dalesandro v. Longs Drugs Stores Cal., Inc.*,
383 F. Supp. 2d 1244 (D. Haw. 2005).....................................................19, 20

*Daniels v. Alphabet Inc.*,
2021 U.S. Dist. LEXIS 64385 (N.D. Cal. Mar. 31, 2021) ..................... 12-16

*Desaigoudar v. Meyercord*,
223 F.3d 1020 (9th Cir. 2000) ......................................................................25

*Dolin v. Facebook, Inc.*,
  289 F. Supp. 3d 1153 (D. Haw. 2018)............................................................23

*Domen v. Vimeo*,
  991 F.3d 66 (2d Cir. 2021) ...............................................................12, 13, 14

*Dyroff v. Ultimate Software Grp., Inc.*,
  934 F.3d 1093 (9th Cir. 2019) ...................................................................9, 10

*Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*,
  946 F.3d 1040 (9th Cir. 2019) .......................................................................12

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
  521 F.3d 1157 (9th Cir. 2008) ...................................................................8, 11

*Fed. Agency of News LLC v. Facebook, Inc.*,
  432 F. Supp. 3d 1107 (N.D. Cal. 2020)........................................................11

*Fyk v. Facebook, Inc.*,
  2019 U.S. Dist. LEXIS 234960 (N.D. Cal. June 18, 2019),
  *aff'd*, 808 F. App'x 597 (9th Cir. 2020) .......................................................12

*Honold v. Deutsche Bank Nat'l Trust Co.*,
  2010 U.S. Dist. LEXIS 132956 (D. Haw. Dec. 15, 2010) ............................15

*Hough v. Pac. Ins. Co.*,
  83 Haw. 457 (1996) .......................................................................................19

*Ill. Nat. Ins. Co. v. Nordic PCL Const., Inc.*,
  870 F. Supp. 2d 1015 (D. Haw. 2012)..........................................................15

*Joy A. McElroy, M.D., Inc. v. Maryl Grp., Inc.*,
  107 Haw. 423, 114 P.3d 929 (Ct. App. 2005)...............................................18

*Kijimoto v. Youtube, LLC*,
  2018 U.S. Dist. LEXIS 225915 (C.D. Cal. Jan. 30, 2018)............................25

*Kimzey v. Yelp! Inc.*,
  836 F.3d 1263 (9th Cir. 2016) .........................................................................9

*King v. Facebook, Inc.*,
  2019 U.S. Dist. LEXIS 151582 (N.D. Cal. Sept. 5, 2019),
  *aff'd,* 845 F. App'x 691 (9th Cir. 2021) .......................................................11

*Klayman v. Zuckerberg*,
　　753 F.3d 1354 (D.C. Cir. 2014)......................................................................8

*Knievel v. ESPN*,
　　393 F.3d 1068 (9th Cir. 2005) ......................................................................3

*Lancaster v. Alphabet Inc.*,
　　2016 U.S. Dist. LEXIS 88908 (N.D. Cal. July 8, 2016) ........................10, 22

*Lewis v. Google, Inc.*,
　　2019 U.S. Dist. LEXIS 223263 (D. Colo. Dec. 31, 2019) ...........................24

*Lewis v. Google LLC*,
　　461 F. Supp. 3d 938 (N.D. Cal. 2020)..........................................................10

*Liberty Mut. Ins. Co. v. Sumo-Nan LLC*,
　　2015 U.S. Dist. LEXIS 149688 (D. Haw. Nov. 4, 2015)..............................16

*Lui Ciro, Inc. v. Ciro, Inc.*,
　　895 F. Supp. 1365 (D. Haw. 1995)................................................................19

*Maeda v. Kennedy Endeavors, Inc.*,
　　407 F. Supp. 3d 953 (D. Haw. 2019).............................................................21

*McAllister v. Disp. Prevention & Resol., Inc.*,
　　2020 U.S. Dist. LEXIS 1902 (D. Haw. Jan. 7, 2020) ...................................25

*Mishiyev v. Alphabet, Inc.*,
　　444 F. Supp. 3d 1154 (N.D. Cal. 2020).........................................................17

*Muhammad v. YouTube*,
　　LLC, 2019 U.S. Dist. LEXIS 92358 (M.D. La. June 3, 2019)................24, 25

*Murphy v. Twitter, Inc.*,
　　60 Cal. App. 5th 12 (2021) ...........................................................................12

*Navarro v. Block*,
　　250 F.3d 729 (9th Cir. 2001) ..........................................................................7

*NetChoice v. Moody*,
　　2021 U.S. Dist. LEXIS 121951 (N.D. Fla. June 30, 2021)...........................14

*OWBR LLC v. Clear Channel Commc'ns, Inc.*,
   266 F. Supp. 2d 1214 (D. Haw. 2003)..............................................................22

*Paulson, Inc. v. Bromar, Inc.*,
   775 F. Supp. 1329 (D. Haw. 1991).................................................................19

*Queens Med. Center v. Kaiser Foundation Health Plan, Inc.*,
   948 F. Supp. 2d 1131 (D. Haw. 2013)...............................................................3

*Ramani v. YouTube LLC*,
   2019 U.S. Dist. LEXIS 197106 (S.D.N.Y. Nov. 12, 2019) ..........................24

*Ryan v. Salisbury*,
   382 F. Supp. 3d 1062 (D. Haw. 2019)..............................................................21

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,
   144 F. Supp. 3d 1088 (N.D. Cal. 2015),
   *aff'd*, 697 F. App'x 526 (9th Cir. 2017) ...............................................9, 10, 11

*Song Fi, Inc. v. Google Inc.*,
   72 F. Supp. 3d 53 (D.D.C. 2014)....................................................................25

*Stewart Org., Inc. v. Ricoh Corp.*,
   487 U.S. 22 (1988)..........................................................................................23

*Sung v. Hamilton*,
   710 F. Supp. 2d 1036 (D. Haw. 2010).......................................................18, 20

*Tok Cha Kim v. CB Richard Ellis Haw., Inc.*,
   288 F. App'x 312 (9th Cir. 2008)....................................................................18

*United States v. Bestfoods*,
   524 U.S. 51 (1998)..........................................................................................22

*Wieck v. CIT Grp., Inc.*,
   308 F. Supp. 3d 1093 (D. Haw. 2018)..............................................................22

*Zeran v. Am. Online, Inc.*,
   129 F.3d 327 (4th Cir. 1997) ..........................................................................10

## STATUTES

28 U.S.C. § 1404(a) ............................................................................22, 23

47 U.S.C. § 230 ................................................................................*passim*

Haw. Rev. Stat. § 480 .......................................................................*passim*

## OTHER

H. Stand. Comm. Rep. No. 716-90, Consumer Protection and
    Commerce on H.B. No. 2527, House Journal of 15th Leg.,
    Reg. Sess. (Haw. 1990) ...................................................................18

Fed. R. Civ. P. 12(b)(6).........................................................................7, 13

## <u>MEMORANDUM IN SUPPORT OF MOTION</u>

Plaintiffs M.E.O.W.I.E. Inc. dba Beach Broadcast ("**M.E.O.W.I.E.**") and Carrol Hall ("**Hall**") (collectively, "**Plaintiffs**") brought this lawsuit to challenge YouTube's decisions about what may—or may not—appear on its platform.   In particular, Plaintiffs complain about YouTube's decision to remove several videos, suspend M.E.O.W.I.E.'s monetization rights, and remove M.E.O.W.I.E.'s channel from YouTube's platform. According to Plaintiffs, their videos include an "alternative view of current events that are not entertained by media." ¶ 14.[1] YouTube removed these videos for violating its Community Guidelines barring hate speech. *Id.* ¶ 17.

Plaintiffs' claims are all barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230 ("**Section 230**"), which provides broad immunity for YouTube to decide what can, or cannot, reside on its platform.  Beyond that, Plaintiffs' claims fail on their own terms: not only have Plaintiffs failed to identify a provision of the relevant contract that YouTube supposedly breached, the underlying agreements expressly reserve to YouTube the right to do what it did in demonetizing and removing Plaintiffs' content for violating YouTube's policies and Community Guidelines. The second cause of action fails because M.E.O.W.I.E., a corporation, lacks standing to bring a claim under HRS § 480-2

---

[1] Citations to "¶ _" are to the Second Amended Complaint ("**SAC**").

("**Unfair or Deceptive Acts or Practices**" or "**UDAP**"), Hawaii's consumer protection law, and M.E.O.W.I.E.'s attempt to add Hall to plead around this issue fails. Finally, Plaintiffs' claims against Alphabet and XXVI Holdings fail because neither is alleged to have engaged in any of the conduct underlying Plaintiffs' claims.

Putting aside these multiple and independently fatal flaws, Plaintiffs have brought this lawsuit in the wrong court. Under the forum selection clause in YouTube's Terms of Service, Plaintiffs agreed to pursue any litigation regarding the YouTube service in the Northern District of California. This clause has been repeatedly applied to transfer claims just like these to the contract's designated forum. In the event the Court elects not to reach the grounds for dismissal, it should instead transfer the case to the Northern District of California.

## FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs' claims all relate to YouTube, an entity that is not named in this lawsuit directly but is owned by Defendant Google LLC ("**Google**"), which is a subsidiary of XXVI Holdings, Inc. ("**XXVI Holdings**") which is in turn owned by Alphabet Inc. ("**Alphabet**")[2] ¶¶ 3-4. YouTube, a popular online service for sharing videos and related content, allows visitors to access and use its service—including

---

[2] Plaintiffs never served XXVI Holdings. As a result, XXVI Holdings has not appeared in this case. Nevertheless, the claims against XXVI Holdings should be dismissed for all the same reasons discussed in this motion.

by creating accounts and uploading videos free of charge—provided they agree and adhere to the Terms of Service ("**TOS**"), which incorporates YouTube's Community Guidelines. *See* ¶ 4; Ex. 1.[3] As the creator and operator of a YouTube channel, ¶¶ 9, 37, Plaintiffs' relationship was governed by the TOS and the Community Guidelines. The SAC references the TOS (¶ 20, calling the TOS "YouTube's end-user agreement") and the Community Guidelines policy that led to the termination of Plaintiffs' videos (¶ 27, noting that YouTube removed Plaintiffs' videos as "hate speech").

   **The YouTube Service and the Governing Agreements**. To create a safe and vibrant community for YouTube users, the TOS and the Community Guidelines establish rules that prohibit videos that may be unlawful or harmful,

---

[3] Exhibits 1-5 attached in support of the Motion are documents referred to extensively in the SAC. *See* ¶¶ 9-11, 1, 20-21, 26-27, 32-34. The agreements referenced in the SAC, which also form the basis for Plaintiffs' breach of contract claim (¶¶ 23-34), refers to YouTube's TOS, the YouTube Partner Program Terms, and the policies incorporated therein, including YouTube's Community Guidelines and Advertiser-friendly content guidelines. These documents are therefore incorporated by reference in the SAC and the court may consider them in ruling on this motion. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Queens Med. Center v. Kaiser Foundation Health Plan, Inc.*, 948 F. Supp. 2d 1131, 1141 (D. Haw. 2013) ("[U]nder the 'incorporation by reference' doctrine in the Ninth Circuit, 'a court may look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment.' The doctrine may be applied to 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading.' If the document is incorporated, the court 'may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'").

and that allow YouTube discretion to remove or refuse to host content on its website. For any videos "in breach of [the TOS] or [that] may cause harm to YouTube, our users, or third parties, [YouTube] may remove or take down that Content in [its] discretion." Ex. 1. The TOS also provides that "YouTube is under no obligation to host or serve Content." *Id.* In addition, the TOS states that disputes related to YouTube's service "will be governed by California law" and "will be litigated exclusively in the federal or state courts of Santa Clara County, California" where YouTube is based. *Id.*

While YouTube generally makes its service available to its users for free, YouTube generates revenue via, among other things, online advertising. ¶¶ 10-11. YouTube allows content creators whose channels meet certain minimum viewership requirements to earn revenue from (or "monetize") their videos as part of the YouTube Partner Program. *See* ¶¶ 10-11, 20. Plaintiff M.E.O.W.I.E. could only earn ad revenue on its YouTube channel if YouTube invited it to participate in and monetize the channel through the YouTube Partner Program. *Id.* To be eligible for monetization, Plaintiffs were required to agree to YouTube's Partner Program Terms and incorporated policies. *See* Ex. 4 ("**YPP Terms**").

The YPP Terms "incorporate[] ... by reference" the TOS, including "[t]he governing law and dispute resolution provisions of the YouTube Terms of Service." Ex. 4. The YPP Terms further provide that "YouTube may either

suspend or terminate your participation in the YouTube Partner Program immediately upon written notice . . . if YouTube reasonably determines or suspects that you have violated these Terms." *Id.* Members of the YouTube Partner Program also must abide by the Advertiser Friendly Guidelines, which require all "monetized" videos to abide by certain standards. Ex. 5. Videos that violated these guidelines (such as containing "hateful & derogatory content") may be demonetized. Ex. 5.

**Plaintiffs' Claims Against YouTube**. Plaintiff M.E.O.W.I.E., a "nonprofit corporation," ¶ 1, created a YouTube channel called "Santa Surfing Beach Broadcast." ¶ 9. Plaintiff Hall is "the podcaster that creates the content and makes use of the YouTube channel." ¶ 37. Plaintiffs allege that the channel had "a very successful following" and that it provided "a conservative alternative view of current events." ¶ 14. Plaintiffs claim that it received nearly 1.5 million views per month, SAC Ex. A, and that the channel earned between $3,000 and $25,000 in revenue per month, with an additional $4,000 from advertising and selling merchandise via its YouTube channel. ¶ 26. Plaintiffs contend that YouTube began suspending M.E.O.W.I.E.'s videos after Plaintiffs posted a video titled "Trump Booms, gets Closer to TRUMPSARA / NESARA Explained."[4] ¶ 27. Plaintiffs

---

[4] The original version of Plaintiffs' Complaint alleged that YouTube began removing videos from the channel after Plaintiff M.E.O.W.I.E. posted a video

allege that on October 21, 2020, YouTube suspended Plaintiffs' ability to upload videos to M.E.O.W.I.E.'s channel and deleted "100 of its videos" for violations of the TOS. Plaintiffs allege that YouTube demonetized the channel on October 27, 2020 and suspended the channel in its entirety on January 11, 2020. ¶¶ 32, 34. Plaintiffs also allege that YouTube has allowed other videos to remain on the platform that Plaintiffs consider offensive. ¶ 49.

Plaintiffs allege that YouTube suspended its channel because "YouTube finds [the channel] unfavorable." ¶ 20; *see also* ¶ 22. Based on these allegations, Plaintiffs claim that YouTube's enforcement of the TOS and Community Guidelines constitute a breach of contract, ¶¶ 23-34,[5] and give rise to a UDAP claim. ¶¶ 35-50.

Plaintiffs filed this lawsuit on March 5, 2021, and served the Complaint on Google and Alphabet on March 31, 2021. On April 21, 2021 Plaintiffs filed but never served a First Amended Complaint. On multiple occasions between April 26 and July 9, 2021, the parties met and conferred about the substance of Defendants'

---

"showing proof that George Floyd, Sandy Hook and El Paso shootings were planned events using paid actors." Compl. ¶ 26.

[5] It is not clear if Plaintiffs are asserting that both M.E.O.W.I.E. and Hall have entered into a contract with YouTube, whether they are alleging they are parties to the same contract, two separate contracts, or some other arrangement. For purposes of this motion, Defendants assume that both Plaintiffs are asserting a claim for breach and are claiming to be parties to the governing agreements. Regardless, Plaintiff(s)' claims fail on their terms no matter which party is asserting the claim.

motion to dismiss and the numerous flaws with Plaintiffs' claims. In an apparent attempt to address some (but clearly not all) of these issues, Plaintiffs prepared a Second Amended Complaint, which was filed with this Court on June 29, 2021.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). All well-pleaded allegations of fact are taken as true, but "conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss." *Bridge Aina Le'a, LLC v. State of Haw. Use Comm'n*, 125 F. Supp. 3d 1051, 1059 (D. Haw. 2015).

## ARGUMENT

### I.    PLAINTIFFS' SECOND AMENDED COMPLAINT SHOULD BE DISMISSED AS A MATTER OF LAW

Plaintiffs' claims fail on multiple independent grounds. Section 230 of the Communications Decency Act provides a complete bar to Plaintiffs' claims. Beyond that, Plaintiffs fail to plead the required elements for a breach of contract claim, including failure to identify the contractual provision(s) YouTube allegedly breached. Additionally, Plaintiff Hall lacks standing to bring a UDAP claim because her allegations all relate to injuries experienced by M.E.O.W.I.E., a corporation. As a result, both Plaintiffs lack standing to proceed as a "consumer" within the definition of the statute. In addition, the SAC fails to plead a plausible

7

UDAP claim. Finally, Plaintiffs' claims against YouTube's uninvolved parent companies, XXVI Holdings and Alphabet, must be dismissed because neither are proper parties in this lawsuit.

### A.   Section 230 Bars Plaintiffs' Claims

Plaintiffs' SAC is barred by the immunity provided in Section 230 of the Communications Decency Act. 47 U.S.C. § 230. To facilitate the growth of the Internet and protect the self-regulatory judgments of online service providers, Congress enacted Section 230. *See Batzel v. Smith*, 333 F.3d 1018, 1027–28 (9th Cir. 2003). The statute offers two distinct but overlapping protections, both of which apply here: (1) Section 230(c)(1) immunizes online platforms from claims seeking to hold them liable for acting as a "publisher or speaker" of content submitted by another; (2) Section 230(c)(2)(A) provides an immunity specifically for restricting access to content that the service provider or its users consider to be "objectionable." § 230(c)(2)(A).

Because Section 230 is intended to "protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles," *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008), courts routinely dismiss claims on the pleadings where, as here, the defendant's entitlement to Section 230 immunity "is evident from the face of the complaint," *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014);

*accord Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1265-66 (9th Cir. 2016) (applying immunity under Section 230 and affirming grant of motion to dismiss).

       1.    <u>YouTube is Protected by Section 230(c)(1)</u>

Section 230(c)(1) states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). This provision "protects websites from liability under state or local law for material posted on their websites by someone else." *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019). There is an established three-part test for immunity under Section 230(c)(1). Section 230(c)(1) bars plaintiff's claim if "(1) [the] defendant is a 'provider or user of an interactive computer service'; (2) the information for which the plaintiff seeks to hold defendant liable is 'information provided by another information content provider'; and (3) plaintiff's claim seeks to hold defendant liable as 'the publisher or speaker' of that information." *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1093 (N.D. Cal. 2015) (cleaned up), *aff'd*, 697 F. App'x 526 (9th Cir. 2017) (Facebook immune for removing user's page); *accord Barnes v. Yahoo!, Inc.*, 570 F. 3d 1096, 1100-01 (9th Cir. 2009). Each of these elements is met here.

*First*, YouTube qualifies as an interactive computer service, because it "provides or enables computer access by multiple users to a computer service."

*SFJ*, 144 F. Supp. 3d at 1093; *Lewis v. Google LLC,* 461 F. Supp. 3d 938, 954 (N.D. Cal. 2020) (YouTube is an interactive service); *see also Dyroff*, 934 F.3d at 1097 (explaining "[w]e interpret the term 'interactive computer service' expansively and "[w]ebsites are the most common interactive computer services").

*Second*, Plaintiffs' claims are based on content they produced and uploaded to YouTube. Plaintiffs affirmatively allege that "YouTube itself is not a content generator," ¶ 12, and that Plaintiffs are "content generator[s]" that "would produce and post videos" on YouTube, ¶ 9. Because the content at the center of Plaintiffs' SAC was all "provided by another information content provider," Section 230(c)(1) applies. 47 U.S.C. § 230(c)(1); *SFJ*, 144 F. Supp. 3d at 1094-95 (content created by the plaintiff and posted on Facebook was "third-party content"); *Dyroff*, 934 F.3d at 1098 (this prong "is also met because … the content at issue was created and developed by [third parties]"); *Bennett v. Google, LLC*, 882 F.3d 1163, 1167 (D.C. Cir. 2018) ("Bennett alleges that only Pierson—and not Google—created the offensive content on the blog."); *Lancaster v. Alphabet Inc.*, 2016 U.S. Dist. LEXIS 88908, at *6 (N.D. Cal. July 8, 2016) (poems posted by plaintiff to YouTube were content provided by "another information content provider").

*Third*, Plaintiffs seek to hold YouTube liable in its capacity as a publisher—that is, for the "exercise of a publisher's traditional editorial functions." *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997). As the Ninth Circuit has

explained, "publication involves reviewing, editing, and deciding whether to publish **or to withdraw from publication** third-party content." *Barnes*, 570 F.3d at 1102 (emphasis added). It follows that "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Id.* (quoting *Fair Hous. Council v. Roommates.com*, LLC, 521 F.3d 1157, 1170-71 (9th Cir. 2008)). That is precisely the situation here. Plaintiffs' entire SAC attacks YouTube's decision to remove Plaintiffs' video content for violating YouTube's Community Guidelines and TOS, and YouTube's refusal to reinstate this content. *See* ¶¶ 17-22, 27-28, 32-34, 39-44. As numerous courts have held when faced with similar claims, these are publisher activities that fall squarely within the protections of Section 230(c)(1). *SFJ*, 144 F. Supp. 3d at 1095 ("removing content is something publishers do, and to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher"); *see also King v. Facebook, Inc*., 2019 U.S. Dist. LEXIS 151582, at *8-11 (N.D. Cal. Sept. 5, 2019), *aff'd,* 845 F. App'x 691 (9th Cir. 2021) (Facebook immune for "removing [plaintiff's] posts, blocking his content, or suspending his accounts"); *Brittain v. Twitter, Inc*., 2019 U.S. Dist. LEXIS 97132, at *6 (N.D. Cal. June 10, 2019) (Twitter immune from claims based on "deletion of [plaintiff's] Accounts"); *Fed. Agency of News LLC v. Facebook, Inc.,* 432 F. Supp. 3d 1107, 1120 (N.D. Cal. 2020) ("[B]ecause Plaintiffs' ... claims are

predicated on Facebook's decision to remove content, Ninth Circuit law under *Barnes* unambiguously establishes that Plaintiffs' claims treat Facebook as a publisher."); *Fyk v. Facebook, Inc.*, 2019 U.S. Dist. LEXIS 234960, at *2-6 (N.D. Cal. June 18, 2019), *aff'd*, 808 F. App'x 597 (9th Cir. 2020) (Facebook immune for "block[ing] content posted by Plaintiff"); *Daniels v. Alphabet Inc.*, 2021 U.S. Dist. LEXIS 64385, at *36-37 (N.D. Cal. Mar. 31, 2021) (same as to YouTube); *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 25–26 (2021) ("Twitter's refusal to allow certain content on its platform, however, is typical publisher conduct protected by section 230.")

### 2.   YouTube is also Protected by Section 230(c)(2)

Apart from the publisher protections provided under Section 230(c)(1), Section 230(c)(2) separately immunizes interactive service providers for "any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected." 47 U.S.C. § 230(c)(2)(A). This "provision establishes a subjective standard whereby internet users and software providers decide what online material is objectionable." *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc*., 946 F.3d 1040, 1044 (9th Cir. 2019).

Two recent cases, *Domen v. Vimeo*, 991 F.3d 66, (2d Cir. 2021), and *Daniels,* 2021 U.S. Dist. LEXIS 64385, at *13-20, are directly on point. The plaintiffs in *Domen* posted videos promoting "sexual orientation change efforts." *Id.* Vimeo took these down in violation of its policy that "Vimeo does not allow videos that harass, incite hatred, or include discriminatory or defamatory speech." *Id.* at 68. Plaintiffs sued, alleging that Vimeo's removal of their videos violated several California laws. The Second Circuit found that Section 230(c)(2) unequivocally barred those claims because the statute "explicitly provides protection for restricting access to content that providers '***consider***[] . . . objectionable,' even if the material would otherwise be constitutionally protected, granting significant subjective discretion." *Id.* at 72 (emphasis in original). The court rejected the plaintiffs' allegations that Vimeo acted in bad faith as "too conclusory to survive a motion to dismiss under Rule 12(b)(6)." *Id.* at 68, 72. Similarly, in *Daniels*, YouTube removed several of the plaintiff's videos, including videos titled "George Floyd, Riots & Anonymous Exposed as Deep State Psyop for NOW" and "Fauci Silenced Dr. Judy Mikovits from Warning the American Public," for violating YouTube's policies barring medical misinformation, harassment, and bullying. *Id.* at *5-6. The court held that Section 230(c)(2) required dismissal of various state-law claims premised on the removal of the plaintiff's videos. *Daniels*, 2021 U.S. Dist. LEXIS 64385, at *35-37. The court

explained that the "complaint contains no plausible factual allegations suggesting that YouTube did not consider the content of the [plaintiff's] videos objectionable and/or contrary to its stated policies and guidelines, or that it removed, restricted access to, or demonetized the videos in bad faith." *Id.* at *36.

The same result is warranted here. Plaintiffs acknowledge that their videos espouse "alternative view[s] of current events that are not entertained by media and most social media." ¶ 14. Those include the view that "recent shootings were planned events by individuals." ¶ 44. There are (and could be) no plausible allegations that YouTube did not subjectively believe that such content was objectionable or in violation of its Community Guidelines. Ex. 3 (YouTube's Hate Speech Policy which expressly bars content that "Den[ies] that a well-documented, violent event took place."). Plaintiffs' effort to assert claims against YouTube for restricting access to such material "run[s] headfirst into the CDA's immunity provision, which 'allows computer service providers to establish standards of decency without risking liability for doing so.'" *Domen*, 991 F.3d at 73 (quoting *Bennett*, 882 F.3d at 1168). As in *Domen* and *Daniels*, token allegations that YouTube acted in bad faith or failed to apply its policies consistently with respect to other third-party content (*e.g.*, ¶¶ 19-20, 22, 49), cannot overcome this protection. *Accord NetChoice v. Moody*, 2021 U.S. Dist. LEXIS 121951, at *20 (N.D. Fla. June 30, 2021) ("Claims based on an alleged inconsistency of a

platform's removal of some posts but not others are preempted [by Section 230(c)(2)].").

**B.   Plaintiffs' Claims Fail on Their Merits**

Even if Plaintiffs' claims were not barred by two separate provisions of Section 230, Plaintiffs simply fail to state a claim for relief.

1.   <u>Plaintiffs Fail to State a Breach of Contract Claim</u>

"To sufficiently state a breach of contract claim, [plaintiffs must] plead '(1) the contract at issue; (2) the parties to the contract; (3) whether Plaintiff performed under the contract; (4) the particular provision of the contract allegedly violated by Defendants; and (5) when and how Defendants allegedly breached the contract.'" *Ill. Nat. Ins. Co. v. Nordic PCL Const., Inc.*, 870 F. Supp. 2d 1015, 1034–35 (D. Haw. 2012) (citing *Honold v. Deutsche Bank Nat'l Trust Co.,* 2010 U.S. Dist. LEXIS 132956, at *7 (D. Haw. Dec. 15, 2010)) (dismissing breach of contract claim).[6]

Plaintiffs do not meet these requirements. While Plaintiffs assert the bare conclusion that there is a contract between Plaintiffs and YouTube (¶ 9), they do not specifically identify any contract underlying their claim. YouTube understands

---

[6] While the terms of the parties' agreement establish that California law applies to Plaintiffs' claims, there is no material difference between Hawaii and California law for purposes of Defendants' argument for dismissal of this claim. *Compare Ill. Nat. Ins. Co.*, 870 F. Supp. 2d at 1034-35, *with Daniels*, 2021 U.S. Dist. LEXIS 64385, at *19-21 (California law requires a plaintiff to plead the existence of a contract with the defendant and breach of the contract by the defendant).

Plaintiffs to be relying on the YouTube TOS and the YouTube Partner Program Terms, *supra* at 3-4, n.3, but Plaintiffs do not point to any "particular provision of the contract" that YouTube allegedly violated, nor do Plaintiffs allege ***how*** YouTube violated the contract. Absent this, Plaintiffs' breach of contract claim must be dismissed because Plaintiffs fail to identify "the specific paragraph or provision within the contract that was breached." *Liberty Mut. Ins. Co. v. Sumo-Nan LLC*, 2015 U.S. Dist. LEXIS 149688, at *9 (D. Haw. Nov. 4, 2015) (dismissing breach of contract claim for failure to plead required elements).

Plaintiffs' failure to identify the contract or point to a provision that YouTube breached by demonetizing and removing Plaintiffs' videos and channel is unsurprising because YouTube's TOS actually provide the opposite. Under the TOS, "***YouTube is under no obligation to host or serve Content***." Ex. 1 (emphasis added). The TOS provide that "If [YouTube] reasonably believe[s] that any Content is in breach of this Agreement or may cause harm to YouTube, our users, or third parties, ***we may remove or take down that Content in our discretion***." Ex. 1 (emphasis added). Likewise, the YouTube Partner Program terms provide that "YouTube may either suspend or terminate your participation in the YouTube Partner Program … if YouTube reasonably determines or suspects that you have violated these Terms." Ex. 4. Because "defendants were given the right to do what they did by the express provisions of the contract there can be no breach."

*Daniels.*, 2021 U.S. Dist. LEXIS 64385, at \*25 (citing *Mishiyev v. Alphabet, Inc.*, 444 F. Supp. 3d 1154, 1159 (N.D. Cal. 2020)).

Because Plaintiffs fail to identify a provision of the contract that YouTube violated, and because the actual TOS and YPP terms explicitly preserve YouTube's right and ability to enforce its policies and demonetize or remove Plaintiffs' videos at its discretion, Plaintiffs' breach of contract claim fails.

2.    Hall Lacks Standing to State a Claim under HRS § 480-2

Plaintiff Carrol Hall (but not M.E.O.W.I.E.) also asserts a UDAP claim. While Hall does not (and could not) plausibly allege that YouTube engaged in any unfair, deceptive, or unlawful actions, Hall's UDAP claim should be dismissed on a simpler ground—she lacks standing because she is not a "consumer" under the statute. Chapter 480 strictly limits standing to bring a claim for unfair or deceptive acts or practices. HRS § 480-2(d) ("[n]o person other than a **consumer**, the attorney general or the director of the office of consumer protection may bring an action based upon unfair or deceptive acts or practices declared unlawful by this section" (emphasis added)). "Consumer" is defined as a "**natural person** who, **primarily for personal, family or household purposes**, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services **in a personal investment**." Haw. Rev. Stat. § 480-1 (emphases added). Chapter 480 was specifically amended in 1990 to "insert[] the

17

word 'personal' before the word 'investment' to clarify that the provision is to protect individual consumers, rather than businesses." H. Stand. Comm. Rep. No. 716-90, Consumer Protection and Commerce on H.B. No. 2527, House Journal of 15th Leg., Reg. Sess. (Haw. 1990). Consistent with that legislative history, courts in this district have held that "[c]hapter 480 was specifically designed to protect individual consumers rather than businesses." *Sung v. Hamilton*, 710 F. Supp. 2d 1036, 1052 (D. Haw. 2010).

In the original Complaint, Plaintiff M.E.O.W.I.E. brought this claim. *See* Dkt. 1-1 at ¶ 1. But as Defendants explained during the parties' pre-filing conference, M.E.O.W.I.E., a "nonprofit corporation incorporated" in Hawaii, is not a "natural person" and does not have standing to bring this claim. *See e.g.*, *Ass'n of Apartment Owners of Newtown Meadows ex rel. its Bd. of Directors v. Venture 15, Inc.*, 115 Haw. 232, 252 (2007); *accord Joy A. McElroy, M.D., Inc. v. Maryl Grp., Inc.*, 107 Haw. 423, 435, 114 P.3d 929, 941 (Ct. App. 2005) ("At the outset, it is evident that McElroy Inc. does not have standing to bring suit under this chapter [HRS 480-2] because a corporation is not a natural person."); *Tok Cha Kim v. CB Richard Ellis Haw., Inc.*, 288 F. App'x 312, 314 (9th Cir. 2008) ("[A]s a corporation, TCI is not a "consumer" with standing.").

In an attempt to plead around this limitation, M.E.O.W.I.E. amended its complaint to add Hall. ¶ 36. Hall alleges that she is a "podcaster that creates the

content and makes use of the YouTube Channel." ¶ 37. Hall does not specifically identify her relationship to M.E.O.W.I.E., but her allegations indicate that she owns or fully controls M.E.O.W.I.E. and its YouTube channel. ¶¶ 26, 37. In light of those allegations, Hall does not have standing to pursue a UDAP claim any more than M.E.O.W.I.E. itself. Where an injury is allegedly suffered by a corporation or non-natural person, a plaintiff may not seek to circumvent the standing requirements of HRS § 480-2 by asserting a claim on behalf of the owner of the injured corporation. *See Lui Ciro, Inc. v. Ciro, Inc.*, 895 F. Supp. 1365, 1388 (D. Haw. 1995) (plaintiff company did not have standing to bring claim under § 480-2 and co-plaintiffs, owners of the company, could not bring a claim when "the harm suffered… arises indirectly, as a result of the harm done to [the company]") (*quoting Paulson, Inc. v. Bromar, Inc.*, 775 F. Supp. 1329, 1337 (D. Haw. 1991) (sole shareholder of corporation could not assert claim for unfair or deceptive acts or practices)). Hawaii courts recognize that "[t]o allow such a derivative claim by shareholders, when the corporation is barred from bringing suit, would defeat the purpose of the standing limitation expressed in § 480-2(d)." *Paulson, Inc.*, 775 F. Supp. at 1339. The same would be true if Hall were attempting to assert a claim as a third-party beneficiary to M.E.O.W.I.E.'s agreement with YouTube. *See Hough v. Pac. Ins..*, 83 Haw. 457, 470-71 (1996).

Even if Hall was not seeking to assert a claim on behalf of M.E.O.W.I.E.,

her allegations establish that she does not meet the definition of a consumer under the statute. Hall does not allege that she "(1) purchased, attempted to purchase, or [was] solicited to purchase goods or services from the defendant." *Dalesandro v. Longs Drugs Stores Cal., Inc.*, 383 F. Supp. 2d 1244, 1248 (D. Haw. 2005). Nor has she alleged that she "(2) committed money, property, or services ***in a personal*** [as opposed to business] investment." *Id.* (emphasis added). Indeed, Hall's claims all relate to an alleged injury ***to M.E.O.W.I.E.*** *See generally* ¶¶ 9-11, 26 (alleging injuries to YouTube channel and decline in revenue earned by YouTube channel). As such, Hall is not a "consumer" within the meaning of Chapter 480. *See Sung*, 710 F. Supp. 2d at 1052 (Plaintiff lacked standing because although he "commenced his purchase of the Property as an individual, his purchase of the Property was for developing and operating a bottling ***business***") (emphasis added).

In short, Hall's allegations make clear that she is asserting this claim as a stand-in for M.E.O.W.I.E., and is playing pleading games to use HRS § 480 to litigate a business dispute. Because Hall has not alleged consumer harm under the statute, she lacks standing and this claim must be dismissed.

       3.      <u>Hall Fails to Allege that YouTube Violated HRS § 480-2</u>

Hall also fails to plead the elements of a UDAP claim. Hall must allege that YouTube's actions "offend[ed] established public policy" and that "the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to

consumers." *Maeda v. Kennedy Endeavors, Inc.*, 407 F. Supp. 3d 953, 966 (D. Haw. 2019), *citing Balthazar v. Verizon Haw., Inc.*, 109 Haw. 69, 77, 123 P.3d 194, 202 (2005). Hall makes no such attempt here, in the third edition of this complaint. Hall alleges that YouTube censors content "arbitrar[ily]," ¶ 50, by removing M.E.O.W.I.E.'s videos for violating YouTube's policies, but leaving up other videos that Hall believes should be removed, ¶ 49. However, as much as Hall may disagree with YouTube's enforcement of its policies, she makes no plausible attempt to plead that YouTube offended established public policy by removing these videos, or somehow engaged in immoral or unethical conduct that is substantially injurious to consumers. *Accord Ryan v. Salisbury*, 382 F. Supp. 3d 1062, 1080 (D. Haw. 2019) (dismissing claims where plaintiff failed to plausibly allege "unfair" practices).

### C.    Plaintiffs Improperly Name Uninvolved Parent Organizations

In a lawsuit directed at events that took place entirely on YouTube, Plaintiffs have not even sued YouTube, LLC. Instead, Plaintiffs sued Google, YouTube's parent company, XXVI Holdings, a holding company that owns Google, and Alphabet, the ultimate parent company of XXVI Holdings. The SAC contains no allegations of any wrongdoing or conduct by XXVI Holdings or Alphabet. Indeed, these companies only appear in the "Parties" section of the SAC, and nowhere in the factual allegations. ¶¶ 3-5. The claims against Alphabet and XXVI Holdings

are, by Plaintiffs' own allegation, entirely based on the alleged conduct of Google. ¶¶ 3, 5 (alleging that Alphabet and XXVI Holdings are liable as "agents" and "managing members" of Google). But it is a "a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation … is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998); *accord OWBR LLC v. Clear Channel Commc'ns, Inc.,* 266 F. Supp. 2d 1214, 1218 (D. Haw. 2003) (dismissing claim against parent company). The SAC does not allege any wrongdoing by, or interaction with, XXVI Holdings or Alphabet. Nor can Plaintiffs name Alphabet as a defendant merely because it is Google's parent corporation. *See Wieck v. CIT Grp., Inc.*, 308 F. Supp. 3d 1093, 1131 (D. Haw. 2018) (dismissing claims where "no substantive allegations" were made against parent holding company); *accord Lancaster*, 2016 U.S. Dist. LEXIS 88908, at *19 (dismissing claims against Alphabet where Plaintiff failed to "make any specific allegations against Alphabet" and recognizing "the 'deeply ingrained' principle that a parent company is not liable for the wrongs of its subsidiaries.").

## II.    IN THE ALTERNATIVE, THIS CASE SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA

In the event the Court prefers not to reach the merits of Plaintiffs' allegations, it should instead transfer this action to the Northern District of California under the parties' binding forum-selection clause.

Under 28 U.S.C. § 1404(a), a district court may transfer a civil action to

another district where the case could have been brought "[f]or the convenience of parties and witnesses" and "in the interest of justice." *See generally Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). As the Supreme Court explained, the "presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis." *Atl. Marine Constr. Co. v. United States Dist. Ct.*, 571 U.S. 49, 63 (2013). "***When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause***." *Id.* at 62 (emphasis added); *see e.g. Dolin v. Facebook, Inc.*, 289 F. Supp. 3d 1153, 1157-1158 , at 6-7 (D. Haw. 2018) (enforcing forum-selection clause under *Atlantic Marine*); *Cupo v. Aliomanu Sand Castles, LLC*, 2017 U.S. Dist. LEXIS 206918, at *4 (D. Haw. Dec. 15, 2017) (same). Indeed, this Court previously examined the same terms of service and forum-selection clause and held that the clause mandated transfer to the Northern District of California. *See Biltz v. Google, Inc.*, 2018 U.S. Dist. LEXIS 112632, at *7 (D. Haw. July 6, 2018). *Id.* The same result is warranted here.

As Plaintiffs allege, the parties entered into an agreement, ¶ 9, pursuant to which YouTube agreed to host Plaintiffs' content subject to an "end-user agreement" with "standards of conduct." ¶ 20; *see also* ¶¶ 17, 20-21, 27, 32-34 (alleging that Plaintiffs' account was subject to the TOS and that YouTube terminated its channel for a violation of the same). It is therefore clear from the

face of the SAC that Plaintiffs agreed to YouTube's TOS and YPP Terms and that "[t]he governing law and dispute resolution provisions of the YouTube Terms of Service" apply to Plaintiffs' claims. *See supra* at 3-4, n.3; Exs. 1, 4.

The TOS unambiguously requires that any litigation arising from the YouTube service be "litigated exclusively in the federal or state courts of Santa Clara County, California, USA." The forum selection clause applies to "[a]ll claims arising out of or relating to these terms or the Service." Ex. 1. This lawsuit—which challenges YouTube's decision to remove M.E.O.W.I.E.'s videos and terminate its YouTube account, and asserts claims based on a breach of the terms governing Plaintiffs' use of the service—plainly "arises from" the TOS and YouTube's service. In short, by accepting the TOS, Plaintiffs agreed to litigate claims like this—whether based on the contract or on tort principles—in the Northern District of California. Plaintiffs gave up any argument that their unilateral choice of this Court as the forum should be given any weight. *See Atl. Marine*, 571 U.S. at 64. Nor is there any public interest factor that favors this Court over the Northern District of California.

Applying these principles, federal courts routinely enforce the forum selection clause in YouTube's TOS. *See, e.g.*, *Lewis v. Google, Inc.*, 2019 U.S. Dist. LEXIS 223263, at *7 (D. Colo. Dec. 31, 2019) (same); *Ramani v. YouTube LLC*, 2019 U.S. Dist. LEXIS 197106, at *4 (S.D.N.Y. Nov. 12, 2019); *Muhammad*

24

*v. YouTube*, *LLC*, 2019 U.S. Dist. LEXIS 92358, at \*9 (M.D. La. June 3, 2019); *Kijimoto v. Youtube, LLC*, 2018 U.S. Dist. LEXIS 225915, at \*9 (C.D. Cal. Jan. 30, 2018); *Song Fi, Inc. v. Google Inc.*, 72 F. Supp. 3d 53, 64 (D.D.C. 2014). This Court should do the same.

## CONCLUSION

For all these reasons, Plaintiffs' SAC should be dismissed and, in light of Plaintiffs' prior amendments and ample notice of the substance of this motion, dismissal should be without further leave to amend. *See Desaigoudar v. Meyercord*, 223 F.3d 1020, 1026 (9th Cir. 2000) (where a plaintiff has previously amended the complaint, a "district court's discretion to deny leave to amend is particularly broad"); *accord McAllister v. Disp. Prevention & Resol., Inc.*, 2020 U.S. Dist. LEXIS 1902, at \*12 (D. Haw. Jan. 7, 2020) (Watson, J.) (dismissing case with prejudice where it was clear that the plaintiff had "made [his] best case and ha[s] been found wanting"). In the alternative, this case should be transferred to the Northern District of California.

DATED:  Lihue, Hawaii, July 13, 2021.

CADES SCHUTTE, LLP

*/s/ Allison Mizuo Lee*
ALLISON MIZUO LEE
KRISTIN S. SHIGEMURA
Attorneys for Defendants
ALPHABET, INC. and
GOOGLE LLC, dba YOUTUBE